THE STATE OF MISSOURI, Respondent, *v.* DAVID S. RANDOLPH, Appellant.

### January 31, 1876.

1. Under the act of February 7, 1874, for the preservation of game, proof that the defendant, a restaurant keeper, caused game to be served to his customers on a certain day within the prohibited period will support a conviction, notwithstanding the fact that there was proof tending to show that the prairie chickens in question had been shipped from the State of Kansas.

2. A State law which prohibits the selling or keeping in one's possession of certain game within a certain period of the year is valid, even when applied to game imported from another State, and, in this application, it is not such a regulation of commerce as belongs exclusively to Congress.

APPEAL from the St. Louis Court of Criminal Correction. *Affirmed*.

*Melville Smith*, for appellant, cited: State *v.* Parkard, 26 Mo. 340; State *v.* Marshall, — Mo. —; State *v.* Spenlove, Riley (S. C.), 269; Peck *v.* State, 7 Humph. 78; Gibbons *v.* Ogden, 9 Wheat. 1; State *v.* Scott & North, 27 Mo. 473; State Freight Tax, 15 Wall. 232; Potter's Dwar. on Stat. 245, and cases there cited.

*M. W. Hogan* and *J. D. Johnson*, for respondent.

BAKEWELL, J., delivered the opinion of the court.

Defendant was convicted on July 23, 1874, in the St. Louis Court of Criminal Correction, of a violation of section 3 of the act of the General Assembly entitled "An act for the preservation of game," approved February 7, 1874, by having in his possession three prairie chickens in July, 1874.

The language of the act is as follows:

"Section 1. It shall be unlawful, in any place in this State, to catch, kill, injure, or pursue with such intent, any pinnated grouse, commonly called prairie chicken, between the first day of February and the fifteenth day of August.

"Section 3. It shall be unlawful for any person to purchase, have in possession, or expose for sale any of the birds or game mentioned in the preceding section 1 of this act, during the season when the catching or injuring the same is prohibited."

The conviction was upon the 1st count of the complaint, of having in his possession three pinnated grouse, on or about July 8th; and defendant was fined $9, being $3 for each bird.

The evidence is that three prairie chickens were cooked and dressed by the servant of defendant, at a restaurant in St. Louis of which defendant acted as proprietor, by the direction of defendant, during the month of July, 1874;

that on July 7, 1874, there were sold and delivered to defendant, in the city of St. Louis, six prairie chickens, imported from the State of Kansas; and that on July 8, 1874, two prairie chickens were served to customers in the same restaurant. We think there was evidence enough to support a conviction.

It is urged by defendant that, inasmuch as it appears that these prairie chickens were imported from Kansas, there can be no conviction. But the act in question makes it a penal offense to have prairie chickens in one's possession from February 1st to August 15th, in Missouri, no matter where the birds were caught. It is insisted that, if this be the meaning of the act, it is in violation of the Constitution of the United States; Congress alone having power to regulate commerce among the several States. We see nothing unconstitutional in the act. The game law would be nugatory if, during the prohibited season, game could be imported from the neighboring States. It would be impossible to show, in most instances, where the game was caught. The State of Missouri has as much right to preserve its game as it has to preserve the health of its citizens, and may prohibit the exhibition for sale, within the State, of provisions out of season, without any violation of the Constitution of the United States. So far as we know, this right has never been disputed, and its exercise by the absolute prohibition of the having in possession, or sale, of game within the State limits, during certain periods of the year, is no more an illegal attempt to regulate commerce between the States than would be a city ordinance against selling oysters in July. The judgment of the court below will be affirmed. The other judges concur.