### THE PEOPLE v. FELIX BOUCHARD.

*Liquor traffic—Boundaries of township—Sale of liquors from boat on public waters.*

1. Act No. 313, Laws of 1887, making it unlawful to engage in the business of selling intoxicating liquors without having paid the statutory tax, does not cover such sales when made upon public waters outside of the shore line of the adjoining township, and to which its boundaries extend, according to the government survey.

2. The boundaries of a municipal corporation are fixed by law, and cannot be made to depend upon the fact that the owners of the land within the limits have rights appurtenant extending beyond such limits.

Exceptions before judgment from Bay. (Cobb, J.) Argued June 10, 1890. Decided August 1, 1890.

Respondent was convicted of engaging in the business of selling liquors without having paid the tax required by Act No. 313, Laws of 1887. Conviction reversed, and

respondent discharged. The facts are stated in the opinion.

*Van Kleeck & McCormick,* for respondent.

*B. W. Huston,* Attorney General, and *Curtis E. Pierce,* Prosecuting Attorney, for the people.

CAHILL, J. The defendant was convicted in the circuit court for Bay county of selling spirituous, intoxicating, brewed, and fermented liquors at retail without having paid the tax required by law.

The people, to maintain and prove the issue on their part, introduced evidence showing that the defendant was the owner and master of the scow Ida May; that on July 7, A. D. 1889, said scow was anchored and stationed on the waters of Saginaw bay, about one-half mile from its west shore, opposite the township of Bangor, in the county of Bay; that the water where the boat was anchored was about five feet in depth; that on the day aforesaid the defendant was on board of, and had charge of, said boat, and had in said boat a load of spirituous and intoxicating, and malt, brewed, and fermented, liquors; that on the west side of Saginaw bay, in said township and county, there are three summer resorts, known as "Oa-at-ka," "Belle View," and "Reservation" beaches, and on the day aforesaid several hundred persons were sojourning at such places; that on that day, defendant's boat was anchored opposite Oa-at-ka beach, and was easily accessible both by persons rowing out in small boats and by bathers; and that some of each class boarded the scow Ida May, and purchased intoxicating, malt, brewed, and fermented liquors from defendant, and that the persons purchasing such liquors became and were intoxicated. It was also shown that the defendant had not paid the tax required by law for the sale of

spirituous and intoxicating liquors, or for malt, brewed, and fermented liquors.

The defendant offered no evidence. The defendant, by his counsel, then requested the court to instruct and charge the jury that there was no evidence in said cause which would entitle the people to a verdict, and that the defendant was entitled to a verdict of not guilty, which request the circuit judge then and there refused, and thereupon charged and instructed the jury that, if they believed the testimony, they might bring in a verdict of guilty. The jury rendered a verdict of guilty.

The defense relied on is that defendant was not carrying on the business of selling liquors in any city, village, or township of this State; that the boundaries of Bangor township, opposite which his boat was anchored, do not extend beyond the shore line of Saginaw bay; that there was no reason, therefore, why he should pay the tax required by law to that township rather than another; that the statute of 1887 (Act No. 313), making it unlawful to engage in the business of selling spirituous and intoxicating liquors "without having paid in full the tax required by the act," does not apply to his case.

The sole question, then, to be decided, is, does the township of Bangor extend beyond the shore line of Saginaw bay, so as to include within its boundaries and jurisdiction the place where respondent was doing business? This is an interesting and important question in this State, which has a coast line bordering upon the Great Lakes aggregating more than 1,600 miles. If the claim made by respondent is good, then it may be possible to conduct the business of selling liquors, without any restraint or regulation of law, at many points in this State opposite pleasure resorts, where the presence of large numbers of idle persons will make such business especially dangerous.

The township of Bangor was organized by the board of supervisors of Bay county in 1859. It included at that time the following surveyed townships: 14 N., ranges 4 and 5 E., lying west of Saginaw river; fractional townships 15 N., ranges 4 and 5 E.; and fractional townships 16 N., ranges 4 and 5 E. Laws of 1859, p. 1120. The boundaries of these surveyed townships bordering on the bay extended only to the shore line, according to the government survey. 1 Lester, Land Laws, 714. The township of Bangor was organized, and its boundaries defined by reference to lines already established by official surveys. It is difficult to see how such boundaries can properly be extended by judicial construction to include territory, whether of land or water, outside such surveyed lines. There is a practical difficulty in establishing any rule as to the distance that the boundaries of a township shall extend into the water on a shore line when the indentations by bays and otherwise are so frequent as to cause such lines to intersect each other at irregular distances from the shore. The same difficulty operates with reference to county lines. It was this, no doubt, that led the legislative council, as early as in 1831, to provide, in an act for the organization of various counties, that the boundaries of the counties of Allegan, Ottawa, Oceana, Saginaw, and Arenac (now Bay) so far as they bordered on the Great Lakes should run to the shore line. 3 Ter. Laws, 871, 872. Limiting the boundaries of counties by the shore lines also led to the provision in the Revised Statutes of 1838, giving to certain counties bordering on the Great Lakes a common jurisdiction of all offenses committed on such lakes within this State. Rev. Stat. 1838, p. 34; How. Stat. §§ 442–451. These statutes not only do not operate to extend the territorial boundaries of the shore counties into the Great Lakes, but they are an express legislative recognition that such boundaries do

not so extend, by placing over the territory covered by water a new and peculiar jurisdiction.

It may be claimed that as the rights of the owners of the land bordering on the bay extend into the bay for a distance of one mile from the shore, for the purpose of fishing (How. Stat. § 2172), perforce the boundaries of the township are likewise so extended. But this cannot be true. The boundaries of a municipal corporation are fixed by law, and cannot be made to depend upon the fact that the owners of land within the limits have rights appurtenant extending beyond such limits.

I am of the opinion that, under the law as it now is, the respondent is not guilty of the offense charged; and the attention of the Legislature is respectfully called to this apparent slip in the statute, which may be easily remedied.

The conviction of the respondent must be set aside, and the prisoner discharged.

The other Justices concurred.