### AIKENS *v* DEPARTMENT OF CONSERVATION
#### OPINION OF THE COURT

1. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT—COURTS.

    Proper construction of any statute is for the court and the purpose of the court in interpreting a statute is to give effect to the legislative intent; if there is a conflict, the spirit and purpose of the statute should prevail over its strict letter.

2. STATUTES — CONSTRUCTION — PUNCTUATION — GRAMMAR — LEGISLATIVE INTENT.

    Punctuation and rules of grammatical construction have been applied for the purpose of ascertaining the meaning of a statute, nevertheless they must yield to a clearly disclosed legislative intention.

3. WORDS AND PHRASES—OR—AND—STATUTES.

    The popular use of "or" and "and" is so loose and so frequently inaccurate that it has infected statutory enactments; while they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context.

4. FISH—STATUTES—LEGISLATIVE INTENT—CONSERVATION.

    The preamble of The Commercial Fishing Law clearly expresses the legislative intent to protect and preserve the fisheries of the State of Michigan; thus, conservation is the legislative

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes §§ 219, 223 *et seq.*
[2] 50 Am Jur, Statutes § 252 *et seq.*
[3] 50 Am Jur, Statutes § 281 *et seq.*
[4] 50 Am Jur, Statutes § 223.
[5, 7] 35 Am Jur 2d, Fish and Game § 29 *et seq.*
[6] 35 Am Jur 2d, Fish and Game §§ 34, 45.

intent of this enactment and the state was attempting to protect fisheries by insuring that undersized fish would not be removed from the waters (MCLA 308.1 *et seq.*).

5. FISH—PERCH—UNLAWFUL POSSESSION—LEGISLATIVE INTENT—STATUTES.

The legislature intended to set up three separate tests under The Commercial Fishing Law to determine the unlawful possession of perch: (1) if they are of a less length than 8-1/2 inches in the round; (2) if when filleted they are of a less weight than 1-3/4 ounces; and (3) if when the head and tails are removed, they are of a less length than 5-1/2 inches; these different tests were to be utilized depending upon the condition in which perch were found by the Michigan Department of Conservation, which department would not have to weigh the fish unless they were found in a filleted state and, if the fish failed to meet any one of the three tests, the possession would be illegal (MCLA 308.14[d]).

6. CONSTITUTIONAL LAW—EQUAL PROTECTION—FISH—FERAE NATURAE—SEARCHES AND SEIZURES—STATUTES.

Commercial perch fishermen, whose catches of perch were seized by the Michigan Department of Conservation on the basis that the fish were undersize and illegal under a statute, were not denied the equal protection of the laws because fish are *ferae naturae*, they are the property of the state, unless otherwise provided by statute (MCLA 308.14[d]).

CONCURRING OPINION

BLACK and T. E. BRENNAN, JJ.

7. FISH — WILDLIFE — CONFISCATION — STATUTES — CONSERVATION DEPARTMENT — COURTS.

*The procedure explicitly mandated by the statute providing for seizure and enforcement powers of the director of conservation must be followed in every case of fish or wildlife confiscation; it is not for the Department of Conservation ex parte, to make the final decision upon the illegality of the catch, anymore than it is for a prosecutor to decide guilt of an accused; it is for the court to stand between government and citizen and decide the right of the matter (MCLA 300.12–300.14).*

## Appeal from Court of Appeals, Division 2, Mc-Gregor, P. J., and Bronson and Mahinske, JJ.,

reversing and remanding Court of Claims, John X. Theiler, J. Submitted November 3, 1971. (No. 28 October Term 1971, Docket No. 53,165.) Decided June 20, 1972.

28 Mich App 181 reversed.

Claim by Sam Aikens, for himself and on behalf of others, against the Department of Conservation for damages for fish alleged to have been illegally confiscated. Summary judgment for defendant. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendant appeals. Reversed.

*Abba I. Friedman,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

SWAINSON, J.   Plaintiffs are commercial perch fishermen who pursue this occupation in the Saginaw Bay area.   In the summer of 1965, officers of the Michigan Department of Conservation* seized certain catches of perch taken by the fishermen on the basis that the fish were undersize and, therefore, illegal under MCLA 308.14(d); MSA 13.1505(d).

Plaintiffs instituted suit in the Court of Claims seeking $6,000 in damages, alleging that the fish had been illegally confiscated by representatives of the state. Both parties moved for summary judgment, and the Court of Claims granted defendant's motion

_____
* By virtue of PA 1968, No 353 (MCLA 16.350; MSA 3.29[250]), the Department of Conservation became the Department of Natural Resources.   We shall refer to it as the Department of Conservation in this opinion.

for summary judgment. A majority of the Court of Appeals reversed, holding that the Court of Claims improperly interpreted MCLA 308.14(d); MSA 13.1505(d), and that, in addition, the state failed to follow the proper statutory condemnation procedure provided by MCLA 300.1 *et seq.*; MSA 13.1211 *et seq.* The Court of Appeals remanded to the Court of Claims with an order to that court to grant, upon motion, a change of venue to the appropriate circuit court to make determination of whether the fish met the weight requirements of MCLA 308.14(d); MSA 13.1505(d). The majority opinion of the Court of Appeals held that if it was found that the weight requirement was met, the circuit court should find that the Department of Conservation wrongfully confiscated the property and that plaintiffs would be entitled to damages, since it was no longer possible to return the property. Judge McGREGOR dissented, holding that the opinion of the Court of Claims should be affirmed. 28 Mich App 181. We granted leave to appeal. 384 Mich 805.

Two basic issues are presented in this appeal: The first involves the interpretation of MCLA 308.14(d); MSA 13.1505(d). Plaintiffs contend that if the defendant is correct in its interpretation of this statute, such interpretation would violate the equal protection provisions of the United States Constitution and the Michigan Constitution. The second issue is whether the Court of Appeals was correct in its ruling that the state should follow the statutory condemnation procedures provided by MCLA 300.1 *et seq.*; MSA 13.1211 *et seq.*

MCLA 308.14(d); MSA 13.1505(d), provides:

"It shall be unlawful to market, have in possession, transport or offer for sale at any time in this

state, whether caught within or without this state, any:

\*      \*      \*

"(d) Perch, of a less length than 8 1/2 inches in the round and filleted perch of a less weight than 1 3/4 ounces; perch with heads and tails off of a less length than 5 1/2 inches;

\*      \*      \*

"The measurement of the length of a fish within the meaning of this act shall be taken in a straight line from the tip of the snout to the utmost end of the tail fin. For the purpose of this act a 'fish in the round' shall be deemed to be a fish that is entirely intact as it was taken out of the water with no part removed by dressing. A 'dressed fish' shall be deemed a fish with the head attached but with the gills and the entire gut or viscera (stomach, liver, intestine, gonads) removed, and a 'filleted fish' shall be deemed to be a fish with the entire head, gut or viscera, gills, bones, scales and all fins removed. The measurements of length and weight as prescribed in this act shall apply without any allowance made for the shrinkage of the fish."

It is well settled that the proper construction of any statute is for the court. *Albert* v *Gibson,* 141 Mich 698 (1905); *Smith* v *City Commission of Grand Rapids,* 281 Mich 235 (1937); *Webster* v *Rotary Electric Steel Co,* 321 Mich 526 (1948). The purpose of the court in interpreting a statute is to give effect to the legislative intent. *People* v *Gould,* 237 Mich 156 (1926); *Attorney General, ex rel Whitcomb,* v *Lau,* 256 Mich 13 (1931); *Bankers Trust Co of Detroit* v *Russell,* 263 Mich 677 (1933); *Ballinger* v *Smith,* 328 Mich 23 (1950). If there is a conflict, the spirit and purpose of the statute should prevail over its strict letter. *Stambaugh Twp* v *Iron County Treasurer,* 153 Mich 104 (1908); *Smith* v *City Com-*

*mission of Grand Rapids, supra; Webster v Rotary Electric Steel Co, supra.*

Both parties have discussed the issue of whether that part of the statute reading:

"Perch, of a less length than 8 1/2 inches in the round *and* filleted perch of a less weight than 1 3/4 ounces;" (Emphasis added.)

should be read in the disjunctive or conjunctive. In *Klug* v *Auditor General,* 194 Mich 41, 45 (1916), the Court stated:

"Relator's position is based largely upon the punctuation and upon rules of grammatical construction, and while these rules have been applied for the purpose of ascertaining the meaning of a statute, nevertheless they must yield to a clearly disclosed legislative intention."

In *Heckathorn* v *Heckathorn,* 284 Mich 677, 681 (1938), the Court said:

"The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context."

See, also, *L. A. Darling Co* v *Water Resources Commission,* 341 Mich 654, 662 (1955).

The preamble of The Commercial Fishing Law (MCLA 308.1 *et seq.*; MSA 13.1491 *et seq.*) clearly expresses the legislative intent to protect and preserve the fisheries of the State of Michigan. Thus, conservation is the legislative intent of this enactment and, indeed, both parties agree with this proposition. The State of Michigan was attempting

to protect the fisheries by insuring that undersize fish would not be removed from the waters. The statute clearly sets up three separate tests to determine the unlawful possession of perch: (1) if they are of a less length than 8-1/2 inches in the round; (2) if when filleted they are of a less weight than 1-3/4 ounces; and (3) if when the head and tails are removed, they are of a less length than 5-1/2 inches.

We agree with the construction of the statute given by the Court of Claims and disagree with that of the Court of Appeals. The test provided by the Court of Appeals would require the Department of Conservation to fillet and weigh every one of the fish caught that were of a less length than 8-1/2 inches. We believe a careful reading of the statute indicates that the Legislature intended to set up three separate tests. The different tests were to be utilized depending upon the condition in which the perch were found by the Department of Conservation. The Department of Conservation would not have to weigh the fish unless they were found in a filleted state. If the fish failed to meet any one of the three tests, then the possession would be illegal. We, therefore, hold that the Court of Appeals erred in its interpretation of the statute.

Plaintiffs contend that if the Court of Claims was correct in its interpretation of the statute, that the application of the statute to them was unconstitutional as a violation of the Equal Protection Clause. The Court of Appeals in its opinion correctly pointed out that the plaintiffs' constitutional rights would not be violated unless the statute gave them explicit statutory right to have possession of the fish. The Court stated (pp 183-184):

"In order for the plaintiffs to maintain a cause of action upon which relief could be granted, it is neces-

sary to establish that they either had legal title to, or a right to possession of, the fish. It has long been recognized that animals *ferae naturae* are not objects of private ownership, but rather belong to the state, which in effect holds the fish in a trust for all of the people of the state in their collective capacity. See *Geer* v. *Connecticut* (1930), 161 US 519 (16 S Ct 600, 40 L Ed 793); *Fleming* v. *United States* (Ct Cl, 1965), 352 F2d 533; *People* v. *Zimberg* (1948), 321 Mich 655; *People* v. *Collison* (1891), 85 Mich 105. The state, representing the people, has the authority to regulate or even prohibit the taking of animals *ferae naturae* if such action is deemed necessary for the public good. See *People* v. *Dornbos* (1901), 127 Mich 136; *People* v. *Lassen* (1906), 142 Mich 597.

"In *People* v. *Zimberg, supra,* p 658, the Court stated:

" 'It is universally held in this country that wild game and fish belong to the State and are subject to its power to regulate and control; that an individual may acquire only such limited or qualified property interest therein as the State chooses to permit. In *People* v. *Soule* (1927), 238 Mich 130, we said:

" ' "This conservation legislation is clearly an exercise of the police power inherent in the State. The wild game and fish (*ferae naturae*) within its confines belong to the State. No private ownership or private property rights are involved in this inquiry. *McKenny* v. *Farnsworth* (1922), 121 Me 450 (118 A 237)." '

"Since the fish belong to this state, it becomes clear that the commercial fishermen may acquire only such right to possession or ownership of the fish as the state may allow. Thus, for the plaintiffs to be in lawful possession of the fish it is imperative that they comply with the regulations which the state has promulgated under the authority of its police power."

Thus, because fish are *ferae naturae*, they are property of the state, unless otherwise provided by the statute. Plaintiffs were not denied the equal protection of the laws.

In view of our disposition of this issue, the second issue raised by the Court of Appeals concerning the proper procedure on remand becomes moot and, therefore, will not be dealt with in this decision.

The judgment of the Court of Appeals is reversed and the judgment of the Court of Claims is affirmed. Costs to defendant.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

T. E. BRENNAN, J.    I concur with my Brother SWAINSON, principally because appellees concede that the perch were undersized.

I would answer, even if by way of dicta, the Attorney General's request for clarification of the responsibilities of the state to initiate proceedings pursuant to 1948 CL 300.14; MSA 13.1224, in cases of confiscation of illegally obtained and possessed game.

The procedure mandated in MCLA 300.12, 300.13 and 300.14; MSA 13.1222, 13.1223 and 13.1224, must be followed in every case of fish or wildlife confiscation.

The rationale advanced by the Department—that since the fish don't belong to the fisherman, no legal proceedings are necessary to take them away from him—simply begs the question.

It is not for the Department *ex parte,* to make the final decision upon the illegality of the catch, anymore than it is for a prosecutor to decide guilt of an accused. It is for the court to stand between

government and citizen and decide the right of the matter.

The language of the statute is explicitly mandatory.

"  *  *  * All wild birds, wild animals, or fish, or nets, or boats, or fishing or hunting appliances or apparatus, or automobiles, or other property, of any kind seized by any of said officers shall be turned over to the director of conservation to be held by him *subject to the order of the court as hereinafter provided.*  *  *  * " MCLA 300.12; MSA 13.1222. (Emphasis added.)

"When the property seized shall not exceed $300.00 in value as appraised by the officer, the officer making the seizure *shall make* a complaint before any justice of the peace of the county, which complaint shall be under oath and shall contain a description of the property seized, the time and place of seizure and the reason or reasons for such seizure. Upon the filing of said complaint the justice with whom the same is filed shall issue an order to the owner of such property, if known, to show cause, if any, why the property mentioned in said complaint should not be condemned and confiscated, and the substance of the complaint shall be stated in the order. Such order to show cause shall have a date fixed therein for the hearing thereof, which date shall not be less than 5 days from the date of its issuance, and shall be served by delivering a true copy thereof to said owner at any time not less than 1 full day before the date of hearing, or if the owner is not known or cannot be located, said order shall be served by posting a true copy thereof in 1 or more public places in the county in which such seizure was made, or publishing a true copy thereof in any newspaper published in such county, or by sending a true copy thereof by registered mail to the last known address of said owner. Such posting or publication of said order shall be had at least 5 days before the date of hear-

ing fixed in said order.    Upon the hearing, *if the justice shall determine* that any of the property mentioned in the complaint was caught, killed, possessed, shipped, or used contrary to law, either by the owner or any person lawfully in possession of the same under an agreement with the owner, an order may be made confiscating by and forfeiting to the state such property and directing its sale or other disposal by the director of conservation, the proceeds from any such sale to be paid into the state treasury and credited to the game protection fund: *Provided, That in case the owner or person lawfully in possession of such goods or things seized signs a property release, forfeiting said property to the state of Michigan, no court proceedings shall be necessary.*    If upon such hearing, the justice should determine that said property was not caught, killed, possessed, shipped, or used contrary to law, he shall make an order directing the director of conservation to forthwith return said property to its owner." MCLA 300.13; MSA 13.1223.   (Emphasis added.)

MCLA 300.14; MSA 13.1224, is to like effect as to property exceeding $300 in value.

BLACK, J., concurred with T. E. BRENNAN, J.